IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KORR ENTERPRISES, INC.,

        Plaintiff,

v

UNITED STATES OF AMERICA,

        Defendants.
                                          /

Case No.

HONORABLE

**COMPLAINT FOR DECLARATORY RELIEF**

Douglas A. Donnell (P33187)
Mika Meyers PLC
Attorneys for Plaintiff
900 Monroe Avenue NW
Grand Rapids, MI 49503
(616) 632-8000
ddonnell@mikameyers.com
                                          /

        NOW COMES Plaintiff, by and through its attorneys, Mika Meyers, PLC, and for its Complaint against Defendant, states and alleges as follows:

        1.     Plaintiff Korr Enterprises, Inc. (hereafter, "Plaintiff" or "Korr") is a Michigan corporation with its principal place of business located at 5042 North Scenic Highway, Honor, Michigan 49640.

        2.     Plaintiff operates the business known as Riverside Canoe Trips ("Riverside") and is engaged in the business of renting canoes, kayaks and tubes to customers for recreational use on the Platte River downstream from the above business location.

        3.     Riverside has been in continuous operation since 1964, primarily operated for many years by Tom and Kathy Stocklen, and later operated by Plaintiff beginning in 2011.

4. The United States Department of Interior exercises jurisdiction and control over the U.S. National Parks System and specifically has jurisdiction and control over Sleeping Bear Dunes National Lakeshore which is part of the National Park System. Deb Haaland is Secretary of the Interior.

5. Within the Department of Interior, the National Park Service operates Sleeping Bear Dunes National Lakeshore, including administration of any Commercial Use Agreements ("CUA") within the Park.

6. Jurisdiction of this Court is based upon 28 U.S.C. §1346(a)(2) which provides that the district courts shall have original jurisdiction in a civil action or claim against the United States founded upon "any regulation of an executive department, or upon any express or implied contract with the United States …" The present action for declaratory relief is founded upon the Department of Interior regulations set forth in 36 CFR §1, *et seq.* and an express written contract with the Department of Interior.

7. Venue in this Court is proper under 28 U.S.C. §1391(a)(2) and (e)(1) in that Plaintiff's business premises, which are the subject of this action, and the events giving rise to Plaintiff's claims, all took place in Benzie County, Michigan.

8. The present dispute involves the assertion by the Department of Interior and the National Park Service that in order for Plaintiff to continuing operating a canoe, kayak and tube livery on its property riparian to the Platte River, it must execute a CUA authorizing this business use or risk being shut down by Defendant.

9. There is an actual case with controversy between these parties, with the current threat to Plaintiffs of being shut down during the short summer season in which Plaintiff's business activity takes place. As set forth more fully below, Defendant has made it clear that it will require

Plaintiff to execute a CUA as a condition to continued operation of its business and Plaintiff denies that Defendant has the statutory or regulatory authority to require such a CUA by Plaintiff.

10. For almost 60 years, since 1964, Plaintiff and its predecessors, Thomas and Kathleen Stocklen, have operated the business commonly known as Riverside Canoe Trips at Plaintiff's principal place of business on North Scenic Highway, adjacent and riparian to the Platte River. The location of Plaintiff's business is shown on a map attached as **Exhibit 1**.

11. Plaintiff's customers typically have launched their canoe, kayak or tube onto the Platte River either from Plaintiff's business premises on North Scenic Highway, shown on **Exhibit 1**, or at a location identified as the Platte River Fishing Weir or at a point identified on **Exhibit 1** as El Dorado Boat Launch. The latter two locations are public access points on the Platte River. These entry points have been used by customers of Riverside Canoe Trips since before the creation of Sleeping Bear Dunes National Lakeshore and before December 31, 1964. Canoes, kayaks and tubes have then been retrieved by Riverside near the mouth of the Platte River at a Lake Township Park shown on **Exhibit 1** at the Platte River Point.

12. Continuously since 1964, Plaintiff and its predecessors have operated Riverside using the entire length of the Platte River between Plaintiff's business premises on North Scenic Highway and the Lake Township Park at the mouth of the Platte River.

13. Sleeping Bear Dunes National Lakeshore was established on October 21, 1970 pursuant to Public Law 191-479. Sleeping Bear Dunes National Lakeshore is a National Park within the jurisdiction and control of the National Park Service and the Department of Interior.

14. Properties for inclusion in Sleeping Bear were acquired over a period of time and the current approximate boundaries of Sleeping Bear National Lakeshore are depicted on **Exhibit 2** which is a map taken from the National Park Service website. The portion of Sleeping Bear

Dunes National Lakeshore relevant to the present dispute, and depicted on **Exhibit 1** is toward the southern end of Sleeping Bear Dunes National Lakeshore.

15. Shortly after Sleeping Bear Dunes National Lakeshore was established, a dispute arose between the Department of Interior and the previous owners of Riverside regarding the authority of the government to condemn the Riverside's property and use of the property which involved the Riverside's customers floating down the Platte River through the National Park.

16. After years of litigating, the parties finally resolved their dispute in 1992 with a Stipulation for Dismissal without Prejudice of the litigation entitled, *United States of America v 0.96 Acres of Land More or Less*. The land described in this case caption is the property upon which Plaintiff's business operations are located and the business operations of Riverside since 1964.

17. The Stipulation dismissing the litigation states that the parties to that action "agree to a settlement of this matter pursuant to the terms set forth in the attached letters of understanding (said letters of understanding are attached hereto as Exhibit A, and incorporated by reference) in full and complete settlement of this condemnation action." The Stipulation also required the United States to pay the sum of $26,750 to "the owners of the defendant land" "in full and complete settlement of any and all administrative and/or legal claims for attorneys' fees, other fees and costs incurred by defendant landowners." A copy of said Stipulation for Dismissal without prejudice is attached as **Exhibit 3**.

18. The letters of understanding that were referenced in the Stipulation for Dismissal are letters dated September 10, 1992 from the Director of the Department of Interior, James Ridenour to Tom and Kathy Stocklen; an undated letter written sometime between September 10 and September 21, 1992 from Director James Ridenour to Thomas and Kathleen Stocklen; and a

letter dated September 21, 1992 from Thomas and Kathleen Stocklen to Department of Interior Director James Ridenour.  These letters are attached to the Stipulation for Dismissal (**Exhibit 3**).  According to the September 21, 1992 letter "the three letters constituting our agreement will be attached as an exhibit to the Stipulation for Dismissal of the condemnation action."

19. The September 10, 1992 letter from Tom and Kathy Stocklen to Director Ridenour, and expressly accepted and agreed to by Director Ridenour states in part,

> we will use our property for the purposes of a canoe livery/marina/general store *as it has been used for the past 28 years*.  We have no intention of changing that use in the future.  Our use has been and will continue to be consistent with the purposes and intent of the act that created the Sleeping Bear Dunes (Public Law 191-479).  (Emphasis added).

Director Ridenour responded to the September 10, 1992 letter on September 21, 1992 stating "I have reviewed and accepted your letter of agreement dated September 10, 1992 regarding the uses of your property now and in the future."  (See **Exhibit 3**).

20. For the next 30 years following the 1992 Agreement between the owner of the property on which Plaintiff's business operations are located and the U.S. Government, Riverside was operated without interference by the National Park Service or the Department of Interior.  Indeed, Plaintiff has participated in many activities assisting in cleanup and preservation of park lands and as part of its rental operations, sells, for the benefit of the National Park Service, week and annual park use passes to Plaintiff's customers who must have a use pass in order to utilize park lands.

21. In the summer of 2022, the United States Department of Interior contacted Plaintiff insisting that Plaintiff execute a CUA to continue the business of Riverside relating to rental of canoes, kayaks and tubes on the Platte River.  After Plaintiffs, through its attorneys, contested the right of the Department of Interior to insist upon a CUA, the Office of the Solicitor of the

Department of Interior sent a letter to Plaintiff's counsel dated November 29, 2022, attached as **Exhibit 4**, stating that a CUA was required for continued operation of Plaintiff's canoe, kayak and tube rental business pursuant to the provisions of 36 CFR §5.3.  Specifically, the letter states:

> The provisions at 36 CFR §1.2(a)(1) and (3) govern the applicability of 36 CFR §5.3, which prohibits entities from engaging in commercial businesses in park areas 'except in accordance with the provisions of a permit, contract, *or other written agreement* with the United States.'  As noted in §5.3, there are several ways an entity can provide visitor services in a Park unit:  one way is to respond to an advertised prospectus for a concession contract; another way is to apply for a CUA.  (Emphasis added).

The Solicitor for the Department of Interior concluded by stating that a CUA is required, without mentioning the 1992 Agreement.

22. The CUA offered to Plaintiffs was attached to Defendant's November 29, 2022 letter (**Exhibit 4**). That CUA would require, as a fee paid to the U.S. Department of Interior, 5% of the *gross* receipts of Plaintiff from its canoe, kayak and tube rentals.  This fee is arbitrary and unreasonable.

23. Following Defendant's November 29, 2022 letter, the parties engaged in several email exchanges, which are attached hereto as **Exhibit 5**.  In that email exchange, counsel for Plaintiff explained that the 1992 Agreement between the landowner of Plaintiff's business premises and the United States Government constituted "a written agreement with the United States," expressly satisfying the condition required in 36 CFR §5.3.  In Plaintiff's counsel's January 30, 2023 email to Ms. Burnage, it was pointed out that the 1992 Agreement not only ended the U.S. Government's attempt to condemn the land, but expressly and unequivocally authorized continued use of those business premises "as it has been used for the past 28 years."  That use, as described herein, always involved Plaintiff's customers floating down the Platte River through

what became the National Park lands and ending at the Lake Township Park at the mouth of the Platte River.

24. In response to Plaintiff's counsel's January 30, 2023 email, Ms. Burnage, on behalf of the Department of Interior, wrote to counsel on February 13, 2023 rejecting Plaintiff's reliance on the September 1992 Agreement and again demanding that Plaintiff execute a CUA to allow continued canoe livery services on the Platte River. Indeed, Ms. Burnage went so far as to say that "when the Stocklens and the NPS entered the 1992 Agreement, the NPS should have required the Stocklens to obtain a CUA." Further, Ms. Burnage states "nothing in the 1992 agreement explicitly or implicitly provides permission for the Stocklens to engage in commercial activity on NPS property," though she fails to explain what was meant in the 1992 Agreement where the Department of Interior expressly agreed the property could be used "for the purpose of a canoe livery/marina, general store as it has been used for the past 28 years" or Director Ridenour's agreement to "uses of your property now and in the future." (See **Exhibit 4**). A copy of Ms. Burnage's February 13, 2023, letter is attached as **Exhibit 6**.

25. The 1992 Agreement by the U.S. Government and continued operation of Riverside without further additional agreements was consistent with the statute creating Sleeping Bear Dunes National Lakeshore, Public Law 91-479 (October 21, 1970), where, in Section 13, Congress stated "The following uses [of commercial properties in existence on December 31, 1964], among others, shall be considered to be uses compatible with the purposes of this Act: … marinas, …". Riverside's operation at the current location began before December 31, 1964.

26. The September 1992 Agreement between the owner of the subject premises and the United States Government constitutes a "written agreement with the United States" under 36 CFR §5.3 authorizing the continued operation of Plaintiff's business as a canoe livery with its customers

floating on the Platte River through National Park territory. Defendant's refusal to honor its 1992 Agreement and insist upon another contract and requiring an unreasonable fee based on gross revenue, not net income, is contrary to 36 CFR §5.3, the 1992 agreement and any other jurisdictional authority under which Defendant claims authority to require such a CUA.

27. Plaintiff requires a declaration from this Court declaring the rights of the parties under the 1992 Agreement so that Plaintiff can operate its business without the constant threat of being shut down by Defendant during Plaintiff's short business season, which will begin May 1.

WHEREFORE, Plaintiff prays that this Court declare that the September 1992 Agreement satisfies the requirements of 36 CFR §5.3 and that Plaintiffs are not required to execute an additional Commercial Use Agreement or other type of agreement with Defendant United States Department of Interior as a condition to continued operation of its canoe livery business, together with an award of its costs, attorney's fees and such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for Plaintiff

Dated: April 6, 2023         By:   /s/ Douglas A. Donnell
                                    Douglas A. Donnell (P33187)
                                    900 Monroe Ave., N.W.
                                    Grand Rapids, MI  49503
                                    (616) 632-8000